UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TOMMY CORRAL,                         ) 1:12-cv—01315-LJO-SKO-HC
                                      )
              Petitioner,             ) FINDINGS AND RECOMMENDATIONS TO
                                      ) DISMISS SOME CLAIMS IN THE
     v.                               ) PETITION (DOC. 1) WITHOUT LEAVE
                                      ) TO AMEND, DISMISS ONE CLAIM WITH
F. GONZALEZ, Warden, et al.,          ) LEAVE TO AMEND, AND GRANT
                                      ) PETITIONER LEAVE TO FILE A FIRST
              Respondents.            ) AMENDED PETITION
                                      )
_____) **OBJECTIONS DEADLINE:**
                                        THIRTY (30) DAYS

        Petitioner is a state prisoner proceeding pro se and in

forma pauperis with a petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254.   The matter has been referred to the

Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local

Rules 302 through 304.   Pending before the Court is the petition,

which was filed in this Court on August 13, 2012.

        I.   <u>Screening the Petition</u>

        Rule 4 of the Rules Governing § 2254 Cases in the United

States District Courts (Habeas Rules) requires the Court to make

1

a preliminary review of each petition for writ of habeas corpus. The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir. 1990).  Habeas Rule 2(c) requires that a petition 1) specify all grounds of relief available to the Petitioner; 2) state the facts supporting each ground; and 3) state the relief requested. Notice pleading is not sufficient; the petition must state facts that point to a real possibility of constitutional error.  Rule 4, Advisory Committee Notes, 1976 Adoption; O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v. Allison, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal.  Hendricks v. Vasquez, 908 F.2d at 491.

The Court may dismiss a petition for writ of habeas corpus either on its own motion under Habeas Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.  Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43 (9th Cir. 2001).  However, a petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted. Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

II.  Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on

2

behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision. Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000). It is thus the governing legal principle or principles set forth by the Supreme Court at the pertinent time. Lockyer v. Andrade, 538 U.S. at 71-72.

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. at 405-06. The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8 (2002). A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend

a clearly established legal principle to a new context in an
objectively unreasonable manner.  Hernandez v. Small, 282 F.3d
1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.  An
application of clearly established federal law is unreasonable
only if it is objectively unreasonable; an incorrect or
inaccurate application is not necessarily unreasonable.
Williams, 529 U.S. at 410.

A state court's determination that a claim lacks merit
precludes federal habeas relief as long as it is possible that
fairminded jurists could disagree on the correctness of the state
court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct.
770, 786 (2011).  Even a strong case for relief does not render
the state court's conclusions unreasonable.  Id.  In order to
obtain federal habeas relief, a state prisoner must show that the
state court's ruling on a claim was "so lacking in justification
that there was an error well understood and comprehended in
existing law beyond any possibility for fairminded disagreement."
Id. at 786-87.  The standards set by § 2254(d) are "highly
deferential standard[s] for evaluating state-court rulings" which
require that state court decisions be given the benefit of the
doubt, and the Petitioner bear the burden of proof.  Cullen v.
Pinholster, 131 S. Ct. at 1398.  Further, habeas relief is not
appropriate unless each ground supporting the state court
decision is examined and found to be unreasonable under the
AEDPA.  Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state
court's legal conclusion was contrary to or an unreasonable
application of federal law, "review... is limited to the record

4

1  that was before the state court that adjudicated the

2  claim on the merits." <u>Cullen v. Pinholster</u>, 131 S. Ct. at 1398.

3  Evidence introduced in federal court has no bearing on review

4  pursuant to § 2254(d)(1). <u>Id.</u> at 1400. Further, 28 U.S.C.

5  § 2254(e)(1) provides that in a habeas proceeding brought by a

6  person in custody pursuant to a judgment of a state court, a

7  determination of a factual issue made by a state court shall be

8  presumed to be correct; the petitioner has the burden of

9  producing clear and convincing evidence to rebut the presumption

10 of correctness. A state court decision on the merits based on a

11 factual determination will not be overturned on factual grounds

12 unless it was objectively unreasonable in light of the evidence

13 presented in the state proceedings. <u>Miller-El v. Cockrell</u>, 537

14 U.S. 322, 340 (2003).

15     III. <u>Background</u>

16          A.  <u>The Present Petition</u>

17     Petitioner alleges he is an inmate of the California

18 Correctional Institution at Tehachapi, California (CCIT), serving

19 a sentence of twenty-eight years imposed on or about May 7, 1999.

20 (Pet., doc. 1, 1.) On or about May 14, 2008, Petitioner was

21 determined by prison authorities to be an associate of the

22 Mexican Mafia (EME) prison gang. His validation as a gang

23 associate resulted in his placement in the Secured Housing Unit

24 (SHU) until he exercises his option to "debrief." (<u>Id.</u> at 31,

25 4.) When validated, Petitioner's release date was September 7,

26 2022. (<u>Id.</u> at 7.) Thereafter, a prison classification committee

27 cancelled Petitioner's credits earned between January 25, 2010

28 and February 22, 2010 because pursuant to Cal. Penal Code §

2933.6, Petitioner was not eligible to earn credits while housed in the SHU; before placement in the SHU, he was eligible to earn credits at a rate of fifteen percent.  (<u>Id.</u> at 4, 7, 30.) Petitioner's release date was changed to November 30, 2024.  (<u>Id.</u> at 24.)

Petitioner challenges the forfeiture and denial of credit he has suffered since January 25, 2010, as a result of the passage of an amendment to Cal. Pen. Code § 2933.6 that took effect on that date.  (<u>Id.</u> at 31.)  He contends that the duration of his confinement has been increased by over two years, or approximately twenty-seven months.  (<u>Id.</u> at 8.)

Petitioner raises the following claims in the petition: 1) application of Cal. Pen. Code § 2933.6, as amended and effective as of January 25, 2010, to Petitioner, whose crime predated the amendment of the section, is a violation of the prohibition against ex post facto laws; 2) restrictions of privileges and forfeiture of credit not for actual misconduct, but rather solely for Petitioner's alleged association and communication with gang members, created an atypical and significant hardship on Petitioner in relation to the normal incidents of prison life and violated the First Amendment; 3) causing a loss of credit and extending the duration of Petitioner's confinement for the alleged misconduct of gang validation, both at the time of the validation and later at the time credit was forfeited, without first affording Petitioner specified procedures required by <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974) (notice of the consequences of gang association or validation, notice of the misconduct via charges or a rule violation report, an opportunity to investigate

6

and collect documentary evidence or to present such evidence for his defense, an investigative employee because of his placement in solitary confinement, a reasonable opportunity to call witnesses in his behalf or question adverse witnesses through a telephone or through an assigned investigative employee, a hearing before a detached body such as a senior hearing officer to determine the facts of specified allegations of misconduct, and advice in writing of any guilty finding of specified misconduct with specification of the evidence relied upon and the credit loss for a specific act of misconduct) violated Petitioner's right to due process of law guaranteed by the Fourteenth Amendment;[1] and 4) because similarly situated groups of gang-validated inmates are housed in general population or other facilities where prison programming is available and are not deprived of their time credit or of procedural due process, singling out Petitioner and his "class," (<u>id.</u> at 10) violated Petitioner's right to the equal protection of the law guaranteed by the Fourteenth Amendment.  (<u>Id.</u> at 4-14.)

Petitioner seeks a declaration from this Court that prison gang validations in California are punitive in nature and that Cal. Pen. Code § 2933.6 will be applied only to prison gang validations occurring after its effective date.  He asks the

---

[1] Petitioner specifically alleges what he would have done at his gang validation hearing if he had received procedural due process, namely, that he would have called as witnesses Ted Rios and Petitioner's cellmate to testify that Petitioner had not ever contacted Ted Rios, and whoever Petitioner had allegedly communicated with in 2001 to testify to the substance of any communication.  Further, Petitioner would have questioned the person who alleged that information to determine the reliability of the person and the information, presented documentary evidence that a symbol relied upon was not exclusively a prison gang symbol, and called the author of a written poem to testify that the meaning of the writings did not relate to a prison gang. (Pet. at 12-13.)

1  Court to recognize a liberty interest in avoiding indefinite

2  detention in the SHU and the deprivation of earned credit, and to

3  declare that gang membership alone or simple association does not

4  warrant a credit loss or an indefinite SHU term unless specific

5  misconduct committed by Petitioner on behalf of the gang is

6  identified.  He seeks to require the California Department of

7  Corrections and Rehabilitation (CDCR) to afford him full

8  procedural due process with respect to prison gang validation or

9  required source items relied on for validation, and to declare

10  that religious and cultural symbols and expressions are not

11  misconduct which can result in a credit loss.  Petitioner seeks a

12  restoration of his credits since January 25, 2010 and of his

13  release date of September 7, 2022.  Alternatively, he seeks a

14  declaration that § 2933.6 is unconstitutional.  (Id. at 15-16.)

15          B.   The Previous Petition

16      The Court takes judicial notice of this court's docket in

17  Tommy Corral v. F. Gonzalez, Warden, et al., case number 1:10-cv-

18  00699-LJO-SMS-HC, which reflects that Petitioner filed a previous

19  petition for writ of habeas corpus in this Court on April 21,

20  2010.[2]  (Doc. 1, 1.)  In the petition, Petitioner challenged the

21  2008 decision of the CDCR that validated him as an active prison

22  gang affiliate.  (Petition, doc. 1; findings and recommendations

23  regarding Respondent's motion to dismiss, doc. 28, 1:23-24.)  On

24  January 20, 2011, the petition was dismissed with prejudice on

25

26          [2] The Court may take judicial notice of court records.  Fed. R. Evid.
27  201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993);
    Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978),
28  aff'd, 645 F.2d 699 (9th Cir. 1981).

1  Respondent's motion on the ground that the petition was untimely
2  because filed beyond the statutory limitations period.  (Doc. 28
3  at 2-7; order adopting, doc. 33.)  Judgment for the Respondent
4  was entered on the same date.  (Doc. 34.)

5     IV.  <u>Successive Petition regarding Gang Validation</u>

6     Because the present petition was filed after April 24, 1996,
7  the effective date of the Antiterrorism and Effective Death
8  Penalty Act of 1996 (AEDPA), the AEDPA applies in this
9  proceeding.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997), <u>cert.</u>
10  <u>denied</u>, 522 U.S. 1008 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004
11  (9th Cir. 1999).

12     Under the AEDPA, a federal court must dismiss a second or
13  successive petition that raises the same grounds as a prior
14  petition.  28 U.S.C. § 2244(b)(1).  The Court must also dismiss a
15  second or successive petition raising a new ground unless the
16  petitioner can show that 1) the claim rests on a new,
17  retroactive, constitutional right or 2) the factual basis of the
18  claim was not previously discoverable through due diligence, and
19  the new facts establish by clear and convincing evidence that but
20  for the constitutional error, no reasonable fact finder would
21  have found the applicant guilty of the underlying offense.  28
22  U.S.C. § 2244(b)(2)(A)-(B).

23     However, it is not the district court that decides whether a
24  second or successive petition meets these requirements, which
25  allow a petitioner to file a second or successive petition.
26  Section 2244(b)(3)(A) provides, "Before a second or successive
27  application permitted by this section is filed in the district
28  court, the applicant shall move in the appropriate court of

appeals for an order authorizing the district court to consider the application."  In other words, a petitioner must obtain leave from the Ninth Circuit before he or she can file a second or successive petition in district court.  See, Felker v. Turpin, 518 U.S. 651, 656-657 (1996).  This Court must dismiss any claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application unless the Court of Appeals has given Petitioner leave to file the petition.  28 U.S.C. § 2244(b)(1).  This limitation has been characterized as jurisdictional.  Burton v. Stewart, 549 U.S. 147, 152 (2007); Cooper v. Calderon, 274 F.3d 1270, 1274 (9th Cir. 2001).

A disposition is "on the merits" if the district court either considered and rejected the claim, or determined that the underlying claim would not be considered by a federal court. McNabb v. Yates, 576 F.3d 1028, 1029 (9th Cir. 2009) (citing Howard v. Lewis, 905 F.2d 1318, 1322 (9th Cir. 1990)).  A dismissal of a federal habeas petition on the ground of untimeliness is a determination "on the merits" for purposes of the rule against successive petitions, and a further petition challenging the same conviction is "second or successive" for purposes of 28 U.S.C. § 2244(b).  McNabb v. Yates, 576 F.3d at 1029-30.  Such a dismissal is a permanent and incurable bar to federal review of the underlying claims.  Id. at 1030.

Here, the first petition concerning Petitioner's gang validation was dismissed on the ground that it was untimely. Thus, the petition was adjudicated on the merits.  Petitioner present claims generally relate to the later conduct of CDCR

staff in 2010 concerning conduct credits and the application of the amendment of Cal. Pen. Code § 2933.6 that took effect that year. However, in Petitioner's third claim, a procedural due process claim, Petitioner asserts that the procedures used at the gang validation were in violation of due process requirements. Thus, this claim, which refers to procedures at the time of the gang validation, includes at least in part a challenge to the constitutionality of Petitioner's gang validation. Such a claim is a successive claim to the extent it relates to the procedures observed in Petitioner's 2008 gang validation.

Petitioner's fourth claim relates to the allegedly unequal application of the gang validation statutes and regulations with respect to the segregated housing to which some gang validated prisoners are allegedly assigned. Although the extent to which this claim actually relates to Petitioner's previous gang validation proceeding is unclear, to the extent Petitioner's equal protection claim challenges Petitioner's 2008 gang validation, it is successive.

Petitioner makes no showing that he has obtained prior leave from the Ninth Circuit to file a successive petition attacking the 2008 gang validation. Accordingly, this court has no jurisdiction to consider Petitioner's renewed application for relief from the 2008 gang validation under section 2254 and must dismiss the petition to the extent it challenges the validation. See, Felker v. Turpin, 518 U.S. 651, 656-57; Burton v. Stewart, 549 U.S. 147, 152; Cooper v. Calderon, 274 F.3d 1270, 1274. If Petitioner desires to proceed in bringing these claims in a petition for writ of habeas corpus, he must file for leave to do

1   so with the Ninth Circuit.   See 28 U.S.C. § 2244(b)(3).

2       Accordingly, to the extent that the present petition

3   challenges Petitioner's 2008 gang validation, it will be

4   recommended that the petition be dismissed as successive.

5       V.   Ex Post Facto Claim concerning Cal. Pen. Code
             § 2933.6
6

7       Petitioner argues that the application of Cal. Pen. Code

    § 2933.6 that took effect on January 25, 2010, violates the
8
    prohibition of ex post facto laws because his crime and gang
9
    validation occurred before the effective date of the revised
10
    statute.
11
        Effective January 25, 2010, Cal. Pen. Code § 2933.6 was
12
    amended to read in pertinent part as follows:
13
            2933.6. (a) Notwithstanding any other law, a person who
14          is placed in a Security Housing Unit, Psychiatric
            Services Unit, Behavioral Management Unit, or an
15          Administrative Segregation Unit for misconduct
            described in subdivision (b) or upon validation as a
16          prison gang member or associate is ineligible to earn
            credits pursuant to Section 2933 or 2933.05 during the
17          time he or she is in the Security Housing Unit,
            Psychiatric Services Unit, Behavioral Management Unit,
18          or the Administrative Segregation Unit for that
            misconduct.
19          ....
            (c) This section does not apply if the administrative
20          finding of the misconduct is overturned or if the
            person is criminally prosecuted for the misconduct and
21          is found not guilty.

22  (2009-2010 Cal. Stats., 3rd Ex. Sess., ch. 28, § 44 [eff. Jan.

23  25, 2010].)[3]

24  ────────────────────

25      [3] Petitioner does not identify his commitment offense in this
    proceeding, but the Court takes judicial notice of a copy of a classification
26  committee review attached to Petitioner's petition in Corral v. Gonzalez,
    1:10-cv-00699-LJO-SMS-HC, doc. 1, undertaken on August 2008, which reflects
27  that Petitioner was received into the Department of Corrections in May 1999
    from Los Angeles County for the offense of second degree murder with street
    gang and firearm enhancements.  (Doc. 1 at 48.)  It thus appears that based on
28  Petitioner's commitment offense, the amended version of § 2933.6 applies to
    Petitioner.

                                    12

The Constitution provides, "No State shall... pass any... ex post facto Law." U.S. Const. art I, § 10, cl. 1. The Ex Post Facto Clause prohibits any law which: 1) makes an act done before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime and makes it greater than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed. <u>Carmell v. Texas</u>, 529 U.S. 513, 522 (2000). The provision ensures fair warning of the effect of legislative acts and permits individuals to rely on the meaning of statutes until they are explicitly changed; it also restricts governmental power by restraining arbitrary and potentially vindictive legislation. <u>Weaver v. Graham</u>, 450 U.S. 24, 28-29 (1981). For a penal law to be ex post facto, it must be both disadvantageous to the offender and retrospective, which in turn means that it must apply to events occurring before its enactment and change the legal consequences of acts completed before its effective date. <u>Id.</u> at 29, 31.

In <u>Weaver v. Graham</u>, 450 U.S. at 25-26, the state applied a state statute that was passed after the date of the petitioner's offense and that repealed an earlier statute that provided that gain time credits "shall" be granted; thus, the new statute reduced the amount of gain time awarded for good conduct and obedience to prison rules. <u>Id.</u> at 25-26. The new enactment was applied to a petitioner whose crime predated it and was used to calculate the gain time available to the petitioner. Under the

13

1   new statute, other provisions permitted some discretionary gain
2   time to be made up; however, under the old statute, the
3   petitioner had been automatically entitled to the gain time
4   simply for avoiding disciplinary infractions and performing
5   assigned tasks.  The new law thus attached legal consequences to
6   a crime committed before it took effect.  Further, regardless of
7   whether the scheme for gain time was part of the original
8   sentence or not, it in fact determined to some extent the
9   petitioner's prison term and thus substantially and materially
10  altered the consequences attached to the crime.  Thus, it was
11  retrospective.  Id. at 32-33, 35-36.

12      Likewise, in Lynce v. Mathis, 519 U.S. 433 (1997), the court
13  held that application of a post-offense statute that cancelled
14  early release credits that were available based solely on the
15  growth of the state prison population violated the Ex Post Facto
16  Clause of the Constitution.  The court noted that the new statute
17  did not merely remove a mechanism that created an opportunity for
18  early release, it rendered ineligible for early release a class
19  of prisoners previously eligible for early release.  The new
20  statute may have affected the precise amount of gain time the
21  petitioner received, and thus it lengthened the time the
22  petitioner spent in prison.  Id. at 442-49.

23      Here, the post-offense statute affected the Petitioner's
24  opportunity to earn credits against his sentence.  However, it
25  did not deprive Petitioner of any credits earned before the new
26  statute took effect; rather, it took away credit that began to
27  accrue after January 25, 2010, the effective date of the statute.
28

Further, the new law did not change the legal consequences of acts completed before its effective date. Although Petitioner's gang validation proceeding did occur before the effective date of the new statute, it is nevertheless reasonable to interpret the limitation on earning credit as a consequence of not the gang validation, but rather Petitioner's continued status as an active gang member or associate. Under California law, an inmate's gang involvement is considered current if there is any documented gang activity within the past six (6) years, and an associate of a gang is a prisoner involved periodically or regularly with members or associates of a gang. Regulations provide for procedures for the validation of gang activity or association, and for periodic review of the active or inactive status of gang members or associates. Cal. Code Regs., tit. 15, § 3378(c)-(h). A validated prison gang member or associate shall be considered for release from a SHU after the inmate is verified as a gang dropout through a debriefing process. Cal. Code Regs., tit. 15, § 3341.5(c)(4); see, Madrid v. Gomez, 889 F.Supp. 1146, 1170-80 (N.D.Cal. 1995).

In sum, the statute does not punish inmates for conduct that was completed before the effective date of the statute; thus, it is not retrospective. Cf., Kansas v. Hendricks, 521 U.S. 346, 370-71 (1997) (holding that a state's statute for committing sexually violent predators as applied to a person whose criminal conduct predated the effective date of the statute was not ex post facto in part; it was not retrospective because confinement was based on a determination of the person's current mental condition and the resulting likelihood of sexually violent

15

conduct in the future, and not on the commission of conduct predating the enactment).

The Court, therefore, concludes that application of § 2933.6 to Petitioner to limit his earning credit after the effective date of the statute was not a violation of the Ex Post Facto Clause and was not contrary to, or an unreasonable application of, clearly established federal law.  Further, Petitioner has not shown any unreasonable determination of fact on the part of the state authorities.

In sum, it will be recommended that Petitioner's first claim that as to him, Cal. Pen. Code § 2933.6 was an ex post facto law, be dismissed because Petitioner has not alleged facts entitling him to relief.

Petitioner's allegations concerning the loss of credit are fully documented; specifically, the classification and withdrawal of credits took effect as of the effective date of the statute. (Pet., doc. 1, 31.)  The Petitioner's own submissions show that the action was not retrospective.  Accordingly, if leave to amend were granted, it does not appear that Petitioner could state a tenable ex post facto claim for relief.  Thus, it will be recommended that Petitioner's ex post facto claim be dismissed without leave to amend.

VI.   <u>First Amendment Violation</u>

Petitioner argues that applying § 2933.6 to him to restrict his privileges, to prevent his earning credits while housed in the SHU, and to forfeit earned credit created an atypical and significant hardship on Petitioner in relation to the normal incidents of prison life and violated the First Amendment.

Petitioner contends that he is being punished not for misconduct, but rather for religious beliefs, cultural symbols, and communications with others.

The basis of Petitioner's claim is the evidence relied upon by prison officials to validate his gang status, which included symbols and communications with other gang associates. (Pet., doc. 1, 4.)  However, as noted above, the gang validation process followed in Petitioner's case is not open to challenge in this proceeding; to the extent that Petitioner attempts to raise it in this proceeding, he is raising a successive claim, which must be dismissed for lack of jurisdiction.

A federal court may only grant a state prisoner's petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A habeas corpus petition is the correct method for a prisoner to challenge the legality or duration of his confinement.  Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991) (quoting Preiser v. Rodriquez, 411 U.S. 475, 485 (1973)); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases, 1976 Adoption.

In contrast, a civil rights action pursuant to 42 U.S.C. § 1983 is the proper method for a prisoner to challenge the conditions of that confinement.  McCarthy v. Bronson, 500 U.S. 136, 141-42 (1991); Preiser, 411 U.S. at 499; Badea, 931 F.2d at 574; Advisory Committee Notes to Habeas Rule 1, 1976 Adoption.

Here, Petitioner's claim that his rights under the First Amendment were violated by the restrictions on his privileges and his inability to earn credit while housed in the SHU concerns not

Petitioner's conviction, sentence, or the duration of his confinement, but rather the conditions of his confinement.[4] Thus, Petitioner is not entitled to habeas corpus relief with respect to this claim, which should be dismissed. Should Petitioner wish to pursue his claim, he must do so by way of a civil rights complaint pursuant to 42 U.S.C. § 1983.

Further, even assuming Petitioner's claim is sufficiently related to the duration of his confinement to be brought pursuant to 28 U.S.C. § 2254, Petitioner has not stated facts showing that he is entitled to relief in this proceeding. Imprisonment does not automatically deprive a prisoner of important constitutional protections such as the First Amendment. Beard v. Banks, 548 U.S. 521, 528 (2006) (citing Turner v. Safley, 482 U.S. 78, 93 (1987)). However, an inmate does not retain rights that are inconsistent with proper incarceration. Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977) (upholding restrictions of inmates' labor organizing activity).

The First Amendment right to freedom of association is among the rights "least compatible with incarceration." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). A federal court must accord substantial deference to the professional judgment of prison administrators, who are responsible for defining the legitimate goals of a correctional system and for determining the most appropriate means to accomplish those goals. Id. First Amendment associational rights may be curtailed when prison

---

[4] Although Petitioner alleges that his gang status resulted in a loss of credits (pet., doc. 1 at 4), Petitioner has not documented a loss of previously earned credit, as distinct from an inability presently to earn credits (id. at 27-31).

officials, in the exercise of their informed discretion, reasonably conclude that such associations possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment.  <u>Jones v. North Carolina Prisoners Labor Union, Inc.</u>, 433 U.S. at 132.

This is consistent with established federal law that a regulation that infringes on a prisoner's constitutional right is valid as long as it is reasonably related to legitimate penological interests.  <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  Factors to consider in determining the reasonableness of a prison regulation are 1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest offered to justify it, 2) whether there are alternative means of exercising the right that remain open to prison inmates, 3) the impact that accommodation of the asserted constitutional right will have on guards, other inmates, and the allocation of prison resources generally, and 4) the absence of ready alternatives, or, whether the rule in question is an exaggerated response to prison concerns.  <u>Turner</u>, 482 U.S. at 89-90.  The petitioner bears the burden of proving the invalidity of prison regulations.  <u>Overton v. Bazzetta</u>, 539 U.S. at 132.

Petitioner has not alleged that he has debriefed or otherwise complied with state law requirements for disassociating with prison gangs.  <u>See</u>, <u>e.g.</u>, Cal. Code Regs., tit. 15, § 3378.  Prison staff determined that Petitioner is a gang associate and therefore a severe threat to the safety of others or the security of the institution.  <u>See</u>, Cal. Code Regs., tit. 15, § 3341.5.

Prison authorities have a legitimate penological interest in stopping prison gang activity.  Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003).  Placing and retaining Petitioner in the SHU is rationally connected to the legitimate governmental interest of protecting inmates and the general security of the institution; prohibiting segregation for gang association would have a negative effect on prison staff's efforts to maintain the security of the institution and the safety of other inmates. Prisoners are free to exercise what associational rights they retain by associating with others who are not gang associates. No ready alternative is apparent.

Petitioner has failed to allege facts indicating that the Turner factors prevent the retention of Petitioner in the SHU. Accordingly, it will be recommended that Petitioner's First Amendment claim be dismissed.  Because the defects in Petitioner's claim stems from its nature and not a dearth of factual allegations, it does not appear that Petitioner could allege a tenable First Amendment claim if leave to amend were granted.  It will, therefore, be recommended that Petitioner's First Amendment claim be dismissed without leave to amend and for lack of subject matter jurisdiction.

VII.   Procedural Due Process

Petitioner argues that at the time of the gang validation and at the time of withdrawing credit that would otherwise have been earned after January 25, 2010, the loss of credit and the opportunity to earn further credit while housed in the SHU violated Petitioner's right to due process of law because Petitioner was not afforded the procedures required by Wolff v.

20

1  <u>McDonnell</u>, 418 U.S. 539.

2      Petitioner alleges he was not given any advance notice of

3  the change in credit earning effectuated on January 25, 2010.

4  (Pet., doc. 1 at 8.)  He asserts that the practical effect of the

5  change was to punish Petitioner for uncharged, unspecified, and

6  unreasonable definitions of misconduct that correspond to "source

7  items" used to validate Petitioner's gang status in 2008 and for

8  associating with a prison gang.  Although no loss of credit-

9  earning opportunity was at stake at the time of the gang

10  validation, the amendment of § 2933.6 raised a gang validation to

11  the status of punitive misconduct.  Petitioner argues that when

12  amended § 2933.6 was applied to him, he became entitled to notice

13  of misconduct via charges or an in-prison rule violation report,

14  an opportunity to investigate and collect documentary evidence or

15  to present such evidence for his defense, an investigative

16  employee to aid him because he was in solitary confinement, a

17  reasonable opportunity to call witnesses on his behalf and/or to

18  question adverse witnesses through a telephone or an assigned

19  investigative employee, a hearing before a senior hearing officer

20  or a detached body to determine the facts of alleged misconduct,

21  advice as to any finding of guilt of specified misconduct, a

22  statement of the evidence relief upon, and a statement of the

23  credit loss exacted for a specific act of misconduct.  Petitioner

24  describes what he would have done during the gang validation

25  procedures if he had been afforded such procedures.

26      As noted above, to the extent Petitioner is raising claims

27  concerning the 2008 gang validation proceeding, his petition

28  should be dismissed as a successive petition.  In the previous

proceeding, the Court considered whether placement in the secured housing unit due to Petitioner's gang validation violated his right to due process of law because of his liberty interest in avoiding placement where the conditions imposed an atypical and significant hardship. This Court determined that even assuming Petitioner had such a liberty interest, Petitioner had undisputably received the same protections discussed in Wilkinson v. Austin, 545 U.S. 209 (2005) (an opportunity to be heard, notice of the adverse decision, and reasons for the decision), and thus Petitioner failed to present a federal claim. (Corral v. Gonzalez, 1:10-cv-00699-LJO-SMS-HC, doc. 28 at 7; doc. 33.)

Further, this Court noted in the previous proceeding that Petitioner's claims for habeas relief stemmed from not only the SHU placement, but also the stripping away of his credit-earning eligibility based on gang validation's being considered misconduct. (Id., doc. 33, 2:9-11.) Thus, Petitioner's due process claim is essentially one that concerns the gang validation procedures, and this Court lacks subject matter jurisdiction over the claim.

Petitioner's contention that he presently is entitled to all the procedural protections of Wolff v. McDonnell, 418 U.S. 539, is essentially a claim that his continued placement in the SHU mandates those procedures. For placement in a maximum security setting, the procedures of notice, an opportunity to be heard in the context of informal, non-adversarial proceedings, and notice of an adverse decision are adequate due process safeguards. Wilkinson v. Austin, 545 U.S. at 228-29. Thus, it is not clear that Petitioner was entitled to the additional procedures

required in <u>Wolff</u> or to any of the additional protections he seeks.[5]

The United States Supreme Court has not held that due process requires that there be some evidence supporting such a placement decision; indeed, related decisions suggest that such a requirement would not be imposed.  <u>See</u>, <u>Swarthout v. Cooke</u>, - U.S. -, -, 131 S.Ct. 859, 862 (2011) (finding "some evidence" review of the denial of parole to be outside this Court's scope of review under § 2254, and thus impliedly declining to impose an evidentiary sufficiency requirement for the denial of parole, a process that involves deprivation of a relatively stronger liberty interest than that possessed by an inmate facing segregation within a prison).  However, the Ninth Circuit has applied the "some evidence" standard to an inmate's placement in the SHU for the administrative purpose of preserving the order and safety of the prison.  <u>Bruce v. Ylst</u>, 351 F.3d at 1287-88.

With respect to Petitioner's retention in the SHU, due process requires that prisoners confined to administrative segregation receive periodic reviews of their placement.  <u>Toussaint v. McCarthy</u>, 926 F.2d 800, 803 (9th Cir. 1990) (holding that periodic review every 120 days of the decision to segregate

---

[5]The processes mandated in <u>Wolff</u> for prison disciplinary hearing include 1) written notice of the charges; 2) at least a brief period of time after the notice (no less than twenty-four hours) to prepare for the hearing; 3) a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action; 4) an opportunity for the inmate to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and 5) aid from a fellow inmate or staff member where an illiterate inmate is involved or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.  <u>See</u>, <u>Wolff v. McDonnell</u>, 418 U.S. at 564, 566, 570.

an inmate satisfies procedural due process).  Further, California law provides for periodic reviews of inmates serving indeterminate SHU terms.  <u>See</u>, Cal. Code Regs., tit. 15, § 3341.5.

Here, Petitioner has not alleged facts that show that he has not received the minimal procedural requirements that attend retention in the SHU.  Thus, he has not alleged facts entitling him to relief in this proceeding.  It is unclear whether Petitioner is presently receiving periodic reviews.  If given leave to amend this claim, he may be able to state facts to support a tenable due process claim.

It will, therefore, be recommended that Petitioner's procedural due process claim challenging the 2008 gang validation be dismissed.  Regarding his challenges to the procedures he was afforded after his placement in the SHU, Petitioner will be given leave to file a first amended petition to allege specific facts showing a violation of procedural due process.

VIII.  <u>Equal Protection</u>

Petitioner alleges that similarly situated groups of gang-validated inmates are housed with the general population or other facilities where prison programming is available, and they are not deprived of their time credits or of procedural due process. Petitioner contends that singling out Petitioner and his "class," (<u>id.</u> at 10) violated Petitioner's right to the equal protection of the law guaranteed by the Fourteenth Amendment.  Petitioner notes that validated gang members need not be housed in the SHU; several hundred validated prison gang members and associates are currently housed outside of the SHU.  Further, Petitioner has

received uneven treatment because he has been denied due process protections mandated by state and federal law, such as the opportunity to call witnesses and proof by a preponderance of evidence.

Petitioner's procedural due process claim has been considered in the foregoing analysis.  With respect to Petitioner's equal protection allegations, prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race, religion, or membership in a protected class subject to restrictions and limitations necessitated by legitimate penological interests. Wolff v. McDonnell, 418 U.S. at 556; Bell v. Wolfish, 441 U.S. 520, 545-46 (1979).  The Equal Protection Clause essentially directs that all persons similarly situated should be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  Violations of equal protection are shown when a respondent intentionally discriminates against a petitioner based on membership in a protected class, Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or when a respondent intentionally treats a member of an identifiable class differently from other similarly situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02 (2008).

Petitioner has not alleged facts that show that membership in a protected class was the basis of any alleged discrimination. Likewise, he has not alleged that he was intentionally treated in

1   a different manner than any similarly situated individuals.

2       More fundamentally, Petitioner fails to allege facts
3   warranting a conclusion that there are similarly situated gang-
4   validated inmates who are housed in less restrictive housing in
5   the absence of a rational basis or relationship to a legitimate
6   state purpose for the difference in treatment.

7       The matter of assigning suspected gang affiliates to a SHU
8   is not a disciplinary response but rather is an administrative
9   strategy to preserve order in the prison and protect safety of
10  all inmates, a matter essentially within the administrative
11  discretion of prison authorities. Munoz v. Rowland, 104 F.3d
12  1096, 1098 (9th Cir. 1997). The internal security of a prison is
13  a matter generally left to the discretion of prison
14  administrators who draw not only on the facts of a particular
15  inmate or incident, but also on the character of the confined
16  inmates, relationships among prisoners and guards, and other
17  imponderable factors, such as rumor or reputation. Hewitt v.
18  Helms, 459 U.S. 460, 474 (1983).

19      Review of the pertinent statutes and regulations reflects
20  that prison administrators investigate whether prisoners are
21  involved in prison gangs, and an institutional classification
22  committee determines if an indefinite SHU term will be imposed.
23  Validation as a prison gang member or associate raises a
24  presumption that a prison gang associate is a severe threat to
25  the safety of others or the security of the institution, and such
26  a prisoner will be placed in a SHU for an indeterminate term.
27  Cal. Code Regs., tit. 15, §§ 3335, 3338, 3341.5. Periodic
28  classification reviews occur at least every 180 days, and there

are opportunities for prisoners in indeterminate SHU status to be reviewed for inactive gang status and release to the general population.  § 3341.5(c)(5).  Although validated gang members or associates are deemed to be a severe threat to safety and security, exceptions are provided for inmates who debrief or become inactive in the gang and may be determined to be suitable for release and transfer to the general population.  However, a prison review board is authorized to retain an inactive gang member or associate in a SHU based on the inmate's past or present level of influence in the gang, history of misconduct, history of criminal activity, or other factors indicating that the inmate poses a threat to other inmates or institutional security.  §§ 3341.5(c)(4)-(5), 3378(e).

The system for placement of validated gang members is based on security and safety concerns, which constitute legitimate state interests.  Petitioner has not alleged facts to remove his individual housing decision, or other decisions made regarding other inmates, from the range of administrative discretion with respect to the safety and security of the institution.

In sum, Petitioner has not alleged that membership in a protected class was the basis of any alleged discrimination, that there was any invidiousness or any intentional treatment of Petitioner that was different from treatment of any similarly situated individuals, or that any such treatment lacked either a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment.  Petitioner has failed to state specific facts that point to a real possibility of constitutional error based on the Equal Protection Clause.

In view of the nature of Petitioner's claim, it does not appear that Petitioner could state a tenable equal protection claim if leave to amend were granted.  It will, therefore, be recommended that Petitioner's equal protection claim be dismissed without leave to amend.

IX.  <u>Jurisdiction</u>

Pursuant to the foregoing analysis, it will be recommended that most of Petitioner's claims be dismissed without leave to amend.  The Court has concluded that leave to amend should be granted as to Petitioner's procedural due process claim concerning his retention in the SHU.

However, Petitioner's procedural due process claim raises an issue as to this Court's jurisdiction.  This Court has a duty to determine its own subject matter jurisdiction, and lack of subject matter jurisdiction can be raised on the Court's own motion at any time. Fed. R. Civ. P. 12(h)(3); <u>CSIBI v. Fustos</u>, 670 F.2d 134, 136 n.3 (9th Cir. 1982) (citing <u>City of Kenosha v. Bruno</u>, 412 U.S. 507, 511-512 (1973)).  When a federal court concludes that it lacks subject matter jurisdiction, the court must dismiss the action.  <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 514 (2006); <u>Moore v. Maricopa County Sheriff's Office</u>, 657 F.3d 890, 894 (9th Cir. 2011).

Here, it is unclear whether Petitioner's procedural due process claim is properly considered pursuant to 28 U.S.C. § 2254, or should alternatively be considered in a suit brought pursuant to 42 U.S.C. § 1983.  Some decisions of prison administrators have been recognized as affecting the duration of confinement.  For example, a decision in a prison disciplinary

28

proceeding that results in a loss of previously earned time credits is a core habeas challenge to the duration of a sentence that must be raised by habeas corpus. Superintendent v. Hill, 472 U.S. 445, 454 (1985) (determining a procedural due process claim concerning loss of time credits resulting from disciplinary procedures and findings); Preiser v. Rodriguez, 411 U.S. 475, 500.

The Supreme Court's decisions concerning the limits of habeas jurisdiction and § 1983 jurisdiction have been rendered in cases involving § 1983 proceedings. However, the limits on habeas jurisdiction and the appropriate extent of any overlap between habeas and § 1983 have not been definitively addressed by the Supreme Court. The Supreme Court has adverted to the possibility of habeas as a potential alternative remedy to an action under § 1983 for unspecified additional and unconstitutional restraints during lawful custody, Preiser v. Rodriguez, 411 U.S. at 499-500, but the Court has declined to address whether a writ of habeas corpus may be used to challenge conditions of confinement as distinct from the fact or length of confinement itself, see, Bell v. Wolfish, 441 U.S. at 527 n.6.

Nevertheless, the Supreme Court continues to recognize a "core" of habeas corpus that refers to suits where success would inevitably affect the legality or duration of confinement. Where a successful suit's effect on the duration of confinement is less likely, the prisoner has a remedy by way of § 1983, and the matter is not within the core of habeas corpus. See, e.g., Wilkinson v. Dotson, 544 U.S. at 82 (success in the form of a new opportunity for review of parole eligibility, or a new parole

1  hearing at which authorities could discretionarily decline to
2  shorten a prison term, would not inevitably lead to release, and
3  the suit would not lie at the core of habeas corpus); Wilkinson
4  v. Austin, 545 U.S. 209 (§ 1983 action in which inmates brought
5  procedural due process challenges to administrative placement in
6  the harsh conditions of a supermax prison where such placement
7  precluded parole consideration).

8      Ninth Circuit cases have recognized a possibility of habeas
9  jurisdiction in suits that do not fall within the core of habeas
10 corpus.  Bostic v. Carlson, 884 F.3d 1267 (9th Cir. 1989) (habeas
11 jurisdiction over a claim seeking expungement of a disciplinary
12 finding likely to accelerate eligibility for parole)[6]; Docken v.
13 Chase, 393 F.3d 1024 (9th Cir. 2004) (a claim challenging the
14 constitutionality of the frequency of parole reviews, where the
15 prisoner was seeking only equitable relief, was held sufficiently
16 related to the duration of confinement).

17     Nevertheless, where a successful challenge to a disciplinary
18 hearing or administrative action will not necessarily shorten the
19 overall length of confinement, habeas jurisdiction is lacking.
20 In Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003), a prisoner
21 sought relief pursuant to § 1983 for allegedly unconstitutional
22 disciplinary proceedings that resulted in administrative
23 segregation.  Expungement of the disciplinary action was not
24 shown to be likely to accelerate eligibility for parole; rather,
25 success would have meant only an opportunity to seek parole from
26 a board that could deny parole on any ground already available to

27

28      [6] The Court notes that Bostic involved a suit pursuant to 28 U.S.C.
   § 2241, not § 2254.

1   it.  Thus, the suit did not threaten to advance the parole date.

2   Id. at 859.  The court held that § 1983 was the appropriate

3   remedy because the alleged constitutional errors did not affect

4   the overall length of the prisoner's confinement; success in the

5   § 1983 action would not necessarily have resulted in an earlier

6   release from incarceration, and the § 1983 suit did not intrude

7   upon the core or "heart" of habeas jurisdiction.  Ramirez, 334

8   F.3d at 852, 858.

9        The court in Ramirez also considered the related question of

10  the extent of habeas corpus jurisdiction, expressly stating that

11  its holding "also clarifies our prior decisions addressing the

12  availability of habeas corpus to challenge the conditions of

13  imprisonment."  334 F.3d at 858.  The court reviewed the

14  decisions in Bostic v. Carlson and Neal v. Shimoda[7] and concluded

15  as follows:

16        Our decision in *Neal v. Shimoda,* 131 F.3d 818 (9th
          Cir.1997), illustrates the importance of measuring the
17        likelihood that a suit under § 1983 will affect the
          length of the prisoner's confinement. In *Neal*, two
18        state prisoners filed suits under § 1983 alleging that
          they were classified as sex offenders in violation of
19        the Due Process and Ex Post Facto guarantees. *Id.* at
          822-23. Among other harms, both inmates argued that the
20        classification affected their eligibility for parole.
          *Id.* We held that *Heck* did not require the inmates to
21        invalidate their classification before bringing suit
          under § 1983, because a favorable judgment "will in no
22        way guarantee parole or necessarily shorten their
          prison sentences by a single day." *Id.* at 824. The
23        prisoner suits did not seek to overturn a disciplinary
          decision that increased their period of incarceration.
24        Rather, a successful § 1983 action would provide only

25  _____

26        [7] In Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997), it was held that
    success in a suit challenging administrative placement in a state sex offender
27  program which rendered the participants ineligible for parole did not
    necessarily affect the duration of confinement because success would not
28  necessarily shorten the inmate's sentence, but would mean at most that the
    inmate would be eligible for parole consideration.

"a ticket to get in the door of the parole board." *Id.* A favorable judgment, therefore, would not "undermine the validity of their convictions," or alter the calculus for their possible parole. *Id.*

*Neal* makes clear that under *Preiser* habeas jurisdiction is proper where a challenge to prison conditions would, if successful, necessarily accelerate the prisoner's release. Thus, *Neal* accords with our holding here that habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.

Ramirez, 334 F.3d at 858-59.

California's policy of assigning gang associates to the SHU is an administrative measure designed to preserve order in the prison and to protect the safety of inmates. Munoz v. Rowland, 104 F.3d at 1098. An inmate's liberty interest in being free from the more restrictive conditions of confinement in secured housing is generally protected by the Due Process Clause, which requires notice of the factual basis for the administrative action, an opportunity to be heard, and notice of any adverse decision. Cf., Wilkinson v. Austin, 545 U.S. at 223-25. However, placement in administrative segregation or secured housing does not necessarily affect the legality or duration of the inmate's confinement.

Here, Petitioner alleges he is serving an indeterminate SHU term as a result of a gang validation finding. (Pet., doc. 1 at 7.) This allegation concerns only his conditions of confinement. Further, as previously noted, Petitioner's assertion that his placement in the SHU resulted in a loss of credit is not borne out by the documentation supporting the petition, which reflects only a loss of the opportunity to earn further credits, as distinct from the loss of earned credits. Petitioner does not

allege he has lost any earned credits or set forth facts showing that his SHU placement has had any appreciable effect on the duration of his confinement.  He appears to be alleging simply that he has lost the opportunity to earn certain credits.  The effect of this, if any, on the duration of his confinement is speculative.

Further, for screening purposes, the Court takes judicial notice of Petitioner's previous petition in Tommy Corral v. F. Gonzalez, Warden, et al., case number 1:10-cv-00699-LJO-SMS-HC, which included documentation of periodic classification committee reviews of Petitioner's SHU placement in which Petitioner's commitment offense was detailed.[8]  The documents reflect that Petitioner's commitment offense is second degree murder with enhancements for discharge of a firearm and street gang activity. (Doc. 1 at 48-49.)

In California, the offense of second degree murder is generally punished by imprisonment in the state prison for a term of fifteen (15) years to life.  Cal. Pen. Code § 190(a). Pursuant to California law, an indeterminate life sentence is in legal effect a sentence for the maximum term of life.  People v. Dyer, 269 Cal.App.2d 209, 214 (1969).  Generally, a convicted person serving an indeterminate life term in state prison is not entitled to release on parole until he is found suitable for such release by the Board of Parole Hearings (previously, the Board of Prison Terms).  Cal. Pen. Code § 3041(b); Cal. Code of Regs.,

---

[8] In the present petition, Petitioner does not identify his commitment offense but alleges that he is serving a twenty-eight-year term pursuant to a conviction suffered on May 7, 1999.  (Doc. 1 at 1.)

tit. 15, § 2402(a).  Under California's Determinate Sentencing
Law, an inmate who is serving an indeterminate sentence for
murder may serve up to life in prison, but he does not become
eligible for parole consideration until the minimum term of
confinement is served.  In re Dannenberg, 34 Cal.4th 1061, 1078
(2005).  The actual confinement period of a life prisoner is
decided by an executive parole agency, which will determine a
prisoner's right to release by determining in turn when the
prisoner is suitable for parole.  Id. (citing Cal. Pen. Code §
3040).

Here, although the enhancements of Petitioner's sentence of
fifteen years to life may be considered determinate portions of
his sentence and thus may in effect lengthen the minimum term, it
appears that Petitioner remains subject to an indeterminate term
of life for the substantive offense of second degree murder.
Thus, it is not clear that any decision concerning Petitioner's
right to earn credit while housed in the SHU would have any
direct or discernible impact upon his ultimate release on parole.

The Court concludes that Petitioner has not alleged facts
that demonstrate that success in this suit would affect the
legality or duration of his confinement.  Thus, Petitioner has
not alleged facts that demonstrate subject matter jurisdiction in
this Court.

However, at this point in the proceedings it appears
possible that Petitioner could allege such facts, including but
not limited to information concerning Petitioner's commitment
offense.  Accordingly, it will be recommended that Petitioner be
given leave to file a first amended petition to set forth

34

additional facts concerning his procedural due process claim and the Court's subject matter jurisdiction.

X.   Leave to File a First Amended Petition

The Court concludes that the instant petition must be dismissed for the reasons stated above.  Petitioner should be given an opportunity to file a first amended petition to cure the deficiencies in his procedural due process claim regarding his retention in the SHU and to demonstrate subject matter jurisdiction in this Court.

Failure to file a petition in compliance with this order (i.e., a completed petition with a cognizable federal claim and exhaustion of state remedies clearly stated) within the allotted time will result in dismissal of the petition and termination of the action.

The amended petition should be entitled, "First Amended Petition," and it must refer to the case number in this action. Local Rule 220 provides that unless prior approval to the contrary is obtained from the Court, every pleading as to which an amendment or supplement is permitted shall be retyped or rewritten and filed so that it is complete in itself without reference to the prior or superseded pleading.

XI.   Recommendation

Accordingly, pursuant to the foregoing analysis it is RECOMMENDED that:

1) Petitioner's claims challenging his gang validation proceedings that occurred in 2008, be DISMISSED without leave to amend as successive claims; and

2) Petitioner's ex post facto claim be DISMISSED without

35

1  leave to amend; and

2       3) Petitioner's First Amendment claim be DISMISSED without
3  leave to amend; and

4       4) Petitioner's equal protection claim be DISMISSED without
5  leave to amend; and

6       5) Petitioner's procedural due process claim be DISMISSED
7  with leave to amend; and

8       6) Petitioner be GRANTED thirty (30) days from the date of
9  service of the Court's order to file an amended petition alleging
10 a procedural due process claim in compliance with this order.

11      These findings and recommendations are submitted to the U.S.
12 District Court Judge assigned to the case, pursuant to the
13 provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local
14 Rules of Practice for the U.S. District Court, Eastern District
15 of California.  Within thirty (30) days after being served with a
16 copy, any party may file written objections with the Court and
17 serve a copy on all parties.  Such a document should be captioned
18 "Objections to Magistrate Judge's Findings and Recommendations."
19 Replies to the objections shall be served and filed within
20 fourteen (14) days (plus three (3) days if served by mail) after
21 service of the objections.  The Court will then review the
22 Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).
23 The parties are advised that failure to file objections within
24 the specified time may waive the right to appeal the District
25 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
26 **IT IS SO ORDERED.**

27 **Dated:   February 19, 2013**              **/s/ Sheila K. Oberto**
                                             UNITED STATES MAGISTRATE JUDGE
28